DECISION AND JUDGMENT ENTRY
Grover Scott, Jr. appeals his conviction for obstructing official business by interfering with a police investigation into the whereabouts of Milah Wright. Scott contends that his conviction is against the sufficiency and weight of the evidence. In order to obtain a conviction for obstruction, the state must show that Scott actually "hampered or impeded" the officer's investigation. Scott seems to admit that he gave a false statement that Wright was not present. However, he contends that his subsequent grant of consent to search the premises negated any potential hampering effect that his "lie" may have had upon the investigation. We assume without deciding that this argument is legally correct. But, that is not to say Scott's conduct cannot be punished. He overlooks the fact that Wright testified he told her to go upstairs and hide from the police. This is a separate act that had the effect of impeding the investigation since Officer Mertz was unable to locate her in the house.
In June 2001, Milah Wright and Heather Fent, both juveniles, were spending the day with Heather's grandmother, Regina Carver. At some point twenty-six year old Grover Scott, Carver's neighbor, invited the girls into his home. Wright testified that she knew her mother and Carver did not want her around Scott. Nevertheless, the girls spent part of the afternoon with Scott at his home without Carver's knowledge or consent. As they were leaving, Scott told the girls that they could come back anytime. A short while later Wright went back to Scott's home, once again without Carver's consent. However, Carver saw Wright go into Scott's home.
Carver told Marilyn Fent, Heather's mother that she had seen Wright go into Scott's home. Ms. Fent contacted the Greenfield Police Department and Officer Mertz responded. Ms. Fent was concerned because Penny Barrett, Wright's mother, was on her way to pick her daughter up from Carver's home and Wright's whereabouts were unknown. Officer Mertz went to Scott's home and repeatedly asked if Wright was there. Each time Scott responded that Wright was not in his home and that he had not seen her since the night before. Scott then gave Officer Mertz permission to search his home. Officer Mertz searched the first level of the house but did not go upstairs. Officer Mertz candidly testified, "He [Scott] was doing some construction in there on the stairway and it's my fault, I didn't go upstairs and look. I looked around the downstairs and the upstairs being under construction I just didn't think anybody would be up there. I didn't go up stairs and look." Ten to twenty minutes after Officer Mertz's abbreviated search, Carver saw Wright running out the back door of Scott's home and told Officer Mertz. When Officer Mertz talked to Wright, she told him that she was at Scott's home and that she hid when the police showed up so that they would not get into trouble. At trial, Wright testified that she was inside Scott's home on two different occasions on the day in question. Wright stated that Scott told her to hide upstairs and she did so because she was afraid they would get in trouble. Moreover, Wright testified that she hid in an upstairs closet and heard the police question Scott. Wright even acknowledged that she heard Scott lie to the police. After talking to Wright, Officer Mertz went back to Scott's home and arrested him for obstructing official business. After a bench trial, the Highland County Court, Greenfield Division, found Scott guilty. This appeal followed.
Scott assigns the following errors for our review:
FIRST ASSIGNMENT OF ERROR
 "THE COURT ERRED IN FINDING DEFENDANT GUILTY BECAUSE THE MAKING OF AN UNSWORN STATEMENT TO A POLICE OFFICER IS NOT AN ACTION THAT CONSTITUTES OBSTRUCTING OFFICIAL BUSINESS IN VIOLATION OF ORC 2921.31."
 SECOND ASSIGNMENT OF ERROR
 "THE COURT ERRED IN FINDING DEFENDANT GUILTY WHERE THE EVIDENCE WAS NOT SUFFICIENT TO MEET THE ELEMENTS OF THE OFFENSE AND WHERE THE SUBSEQUENT FINDING OF GUILTY WAS CONTRARY TO THE SUFFICIENCY OF THE EVIDENCE, ALL IN VIOLATION OF DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 THIRD ASSIGNMENT OF ERROR
 "THE FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
We construe Scott's first assignment of error to argue that, as a matter of law, the evidence is insufficient because his consent to a search of his home negated any hindering effect that his "lie" may have had upon Officer Mertz's investigation. Scott's second assignment of error also challenges the sufficiency of the evidence. Therefore, we will consider Scott's first and second assignments of error together.
Our function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, could convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. We must inquire whether the evidence, if viewed in the light most favorable to the prosecution, could convince any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. Id. citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
The trial court convicted Scott of obstructing official business in violation of R.C. 2921.31(A), a second degree misdemeanor. R.C. 2921.31(A) states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall doany act that hampers or impedes a public official in the performance of the public official's lawful duties." [Emphasis Added.] R.C. 2921.31's legislative history reveals that the "act" must have its intended effect, i.e., must actually hamper or impede the investigation, before it can be punishable. See 1973 Legislative Service Commission Commentary to R.C. 2921.31. Moreover, we have previously held that a conviction for obstruction of official business properly focuses on the defendant's conduct and the effect that the conduct has on the public official. SeeState v. Neptune (April 21, 2000), Athens App. No. 99CA25.
This view is consistent with that of the Ohio Supreme Court. See Statev. Lazzaro, 76 Ohio St.3d 261, 1996-Ohio-397, 667 N.E.2d 384. InLazzaro, the defendant actually hampered and impeded an assault investigation because she told the officer that there were no witnesses, when in fact she had possession of the sole witness's statement that described the assault as intentional. Since the officer was unaware of the only witness, he concluded that the assault was accidental and did not file criminal charges. Four days later the defendant called the investigating officer and informed him that there was a witness who thought the assault was intentional. As a result, the officer reopened the assault case and filed criminal charges, which resulted in a guilty plea. The Supreme Court concluded that Lazzaro's unsworn false oral statement that there were no witnesses to the assault impeded the investigation because it had its intended effect, which was to conceal a criminal act. Id. at 265-66.
Scott contends the issue here is whether his false statement that Wright was not present actually hampered Officer Mertz's investigation. He contends that it could not in light of his consent to search; i.e., the reason Mertz did not find Wright is Mertz's self-imposed limitation on the search. Even if we assume this proposition is legally correct, Scott overlooks his instructions to Wright to hide. Clearly, Officer Mertz's efforts to find Wright failed in part because he limited his search to the downstairs. However, his efforts were also thwarted by Scott's instruction to Wright to hide. This instruction to hide is "an act" within the meaning of the statute. It clearly had its intended effect, which was to prevent Mertz from finding Wright. Scott's consent to a search of his home did not negate that result. Absent the instruction to hide, Wright would have been downstairs and open to observation. Moreover, given how well she followed instruction, even a reasonable search may not have been successful. A reasonable factfinder could conclude that Scott encouraged Officer Mertz to search his home because he knew that Wright was well hidden and would not be found. Therefore, viewed in the light most favorable to the prosecution, Scott's act of telling Wright to hide and her compliance with his request, impeded Officer Mertz's investigation. Scott's first and second assignments of error are overruled.
Scott's third assignment of error challenges the weight of the evidence. Scott contends that the state did not show, beyond a reasonable doubt, that his actions hampered or impeded the police investigation.
The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, paragraph two of the syllabus. Therefore, even though we have already addressed the sufficiency of the evidence, it is still necessary to address the weight of the evidence because it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. See State v.Robinson (1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict.Thompkins, 78 Ohio St.3d at 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the court clearly lost its way and created a manifest miscarriage of justice. Id. citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the court clearly lost its way, we must reverse the conviction and order a new trial. Id. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-94,1998-Ohio-533, 702 N.E.2d 866. We are also guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79, 461 N.E.2d 1273.
Here, the trial court, acting as the factfinder, specifically found that Wright's testimony was more credible than Scott's because it was corroborated by other witnesses. The state introduced substantial evidence to show that Wright was in Scott's home, Scott knew that she was in his home, Scott told her to hide and Wright hid in an upstairs closet. Therefore, after carefully reviewing the record, we cannot conclude that the trial court "clearly lost its way and committed a manifest miscarriage of justice" in finding Scott guilty. Scott's third assignment of error is overruled.
Scott's conviction for obstruction of official business is supported by sufficient evidence and is not against the manifest weight of the evidence.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment and Opinion.